## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | | |
|---|---|---|
| Kevin and Deborah Langager, | ) | Civil Action No.: 3:17-cv-03161-CMC |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | |
| The United States of America, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiffs, by and through their undersigned counsel, complaining of the Defendant, hereby allege as follows:

### JURISDICTIONAL ALLEGATIONS

1.    Plaintiffs, Kevin Langager (hereinafter "Mr. Langager") and his wife Deborah Langager (hereinafter "Mrs. Langager"), bring this action against the United States of America (hereinafter "USA") for injuries and damages Mr. Langager sustained from substandard medical care rendered to him by agents and/or employees of the USA.

2.    Mrs. Langager has a cause of action against the above Defendant for loss of consortium arising out of the injuries and damages suffered by her husband.  At all times relevant to this Complaint, Plaintiffs were citizens and residents of Greenville County, South Carolina. Mr. Langager is a veteran of the United States Armed Services and thus was entitled to health care through the Veterans Administration.

3.    This action is brought against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq* and 28 U.S.C. § 1346(b)(1) for money damages as compensation for the injury to Mr. Langager, caused by the acts of employees, servants, and agents of the United States Government, working at the William J. Dorn Veterans Administration Medical Center

(hereinafter "VA" or "VAMC"), located in Columbia, South Carolina and services rendered through the outpatient veterans administration center located in Greenville, South Carolina.

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1402(b) because many of the acts complained of in this case occurred in the Columbia Division of the United States District Court.  Additionally, there was a nearly identical case alleging the same breaches in this case filed recently in the Columbia Division of the United States District Court

5.      In addition, venue is proper in this Court in that all, or a substantial part, of the acts and/or omissions forming the basis of these claims occurred in the District of South Carolina, Columbia Division.

6.      Plaintiffs have fully complied with the provisions of 28 U.S.C. § 2675 of the Federal Tort Claims act by giving formal written notice to the USA through the filing of a Form 95 with the Department of Veteran Affairs on January 24, 2017.

7.      The Department of Veteran Affairs took a statement from the Plaintiffs in their investigation of the allegations in the Form 95 filed in this matter but have not attempted settlement Plaintiff's case subsequent to the filing of the Form 95, and there has been no resolution of Plaintiffs' claims to date.

8.      Six months has passed since the filing of the Form 95 and though there has been no official denial of Plaintiffs' claim and suit is being filed since there has been no official denial or resolution of Plaintiffs' Form 95 claim.

9.      An Affidavit from a qualified medical expert regarding the actions or inactions of employees and/or agents of the USA has been contemporaneously filed with this Complaint (Attached hereto as Exhibit 1).

10.     The Affidavit sets forth certain breaches of the standard of care by Defendant, their agents and/or employees.  Neither the Affidavit, nor the allegations contained herein, are an all-

inclusive list of negligence which will be attributed to Defendant, their agents and/or employees. Additionally, the type(s) and or description(s) of damages to Plaintiffs described herein, are/is not an all-inclusive list of damages suffered by them.

11.    Upon information and belief, Defendant USA has attending physicians, nurses and other staff who are its agents, servants, and employees, and all acts or omissions complained of herein, performed by said agents, servants, and employees occurred during the course and scope of such agency and/or employment and is imputed to Defendant USA.

12.    The negligent acts, omissions, and liability of the Defendant includes its agents, principals, employees and/or servants, both directly and vicariously, pursuant to principals of non-delegable duty, corporate liability, apparent authority, agency, ostensible agency and/or respondeat superior.

## FACTUAL ALLEGATIONS

### (Medical/General Background)

13.    This action concerns the substandard medical and nursing care provided to veteran Kevin Langager at the Dorn VA Medical Center in Columbia, South Carolina and the outpatient VA Medical Center in Greenville, South Carolina by Dr. Alan Koslow and other agents, servants, and employees of the VAMC.

14.    Kevin Langager (hereinafter "KL") was a 52-year-old male who had a history of right knee pain prior to October 2015.

15.    In October 2015, the pain got worse. During a physical therapy session on October 22, 2015, he began having significant cramping in his right calf.

16.    He complained of numbness that was worse when sitting, driving and when he laid down.

17.     He was taken directly from physical therapy and seen urgently by Gretchen Kaneb, MD., his primary care provider (hereinafter "PCP").

18.     After examination by Dr. Kaneb, it was felt that KL was suffering from claudication.

19.     As a result of this preliminary diagnosis, the PCP ordered an arterial duplex study performed on the patient.

20.     On October 29, 2015, the lower extremity arterial study was performed.

21.     The study was an abnormal and consistent with bilateral occlusive arterial disease with aorto-iliac and more distal pressure drops.

22.     The next day, Dr. Kaneb received the results and a vascular consultation was ordered for KL.

23.     On November 6, 2015, KL was seen by Dr. Christopher Carsten, with Vascular Health Alliance.

24.     The ankle brachial index diagnostic test was repeated and revealed significant arterial occlusive disease.

25.     Mr. Langager was seen by Alan Koslow, MD of the Veteran's Administration on November 9, 2015.

26.     After Dr. Koslow's examination of the patient, he felt Mr. Langager suffered from bilateral iliac occlusion and possible right SFA occlusion.

27.     The next step was to have Mr. Langager undergo a CT angiogram (hereinafter "CTA") of the iliac femoral system.

28.     The CTA aorta-iliofemoral runoff was performed on November 15, 2015.  The CTA revealed a complete celiac, superior mesenteric artery (SMA) occlusion and bilateral iliac occlusions.

29.    Once KL was cleared by cardiology, surgery was to be performed by Dr. Koslow, including, but not limited to, endarterectomy and stenting with croser devise and stents.

**(Dr. Koslow's Hidden History of Incompetency)**

30.    Unknown to Mr. Langager, but well known to Dr. Koslow (and therefore by extension known to the VA), Dr. Koslow previously signed an agreement with the Iowa Medical Board acknowledging, among other things, his incompetence.  The Statement of Charges and subsequent Settlement Agreement are attached to the Complaint collectively as Exhibit 2.

31.    More specifically, Dr. Koslow was charged by the Iowa Medical Board with professional incompetency by demonstrating one or more of the following:

  a.  "A substantial lack of knowledge or ability to discharge professional obligations within the scope of the physician's or surgeon's practice;"

  b.  "A substantial deviation from the standards of learning or skill ordinarily possessed and applied by other physicians or surgeons in the state of Iowa acting in the same or similar circumstances;"

  c.  "A failure by a physician or surgeon to exercise in a substantial respect that degree of care which is ordinarily exercised by the average physician or surgeon in the state of Iowa acting in the same or similar circumstances;" or

  d.  "A willful or repeated departure from, or the failure to conform to, the minimal standard of acceptable and prevailing practice of medicine and surgery in Iowa."  Exhibit 2 at Page 4.

32.    Notably, Dr. Koslow was specifically alleged to have been incompetent with regard to the treatment and management of peripheral vascular disease.  Specifically, the Iowa Medical Board charged the following:

His most significant weaknesses were in the area of peripheral artery disease, carotid endarterectomy and thoracic outlet syndrome. His clinical judgement and reasoning were inadequate including incomplete evaluations, treatment planning and inconsistent recognition of complications. His documentation in patient charts was inadequate and his communication skills were marginal with need for improvement.

Exhibit 2 at Page 7.

33.    Dr. Koslow agreed with the charges. In his settlement agreement, Dr. Koslow agreed to extensive supervision by the medical board, further education, and an inability to practice medicine without the supervision of a "practice monitor," a board-certified vascular or cardiothoracic surgeon, and a "worksite monitor," "a physician who regularly observes and/or supervises" Dr. Koslow and agrees "to inform the Board immediately if there is evidence of disruptive behavior or a violation of [the settlement agreement]." Dr. Koslow accepted the agreement and restrictions by his signature on November 25, 2015. See Exhibit 2 generally at Pages 9 – 16, and Exhibit 2 at Page 16 for Dr. Koslow's signature.

34.    The Iowa Medical Board formalized the agreement on December 11, 2015. Notably, Dr. Koslow operated on Mr. Langager on December 17, 2015 – approximately one week after Dr. Koslow agreed to the charges and sanctions against him.

35.    Mr. Langager was never informed of this incompetent physician by the physician himself or the VA.

36.    He was left to be a guinea pig at the behest of the VA who is supposed to advocate for the veterans of this country.

37.    No one told Mr. Langager that his VA Doctor (Koslow) had been reprimanded for incompetence or that the USA actually hired an incompetent doctor to operate on veterans of the United States.

**(The Procedure and the Aftermath)**

38.    KL was cleared by cardiology and taken to surgery on December 17, 2015, by Dr. Alan Koslow, for an endarterectomy of infrarenal aorta, left common iliac artery, left external iliac artery and right common iliac artery as well as a polytetrafluoroethylene bypass graft from distal right common iliac artery to right common femoral artery.

39.    He had palpable pulses on the left and dopplerable pulses on the right. He was discharged home on December 22, 2015.

40.    At KL's cardiology follow up on January 7, 2015, he complained of leg weakness, persistent abdominal and lower back pain with foot numbness and constipation.

41.    He was referred to Dr. Koslow for the management of his peripheral vascular disease, persistent leg weakness and abdominal pain. Follow up was not scheduled for another two (2) weeks.

42.    On January 14, 2015, a CT with contrast suggested that KL had a significant blockage in the celiac and SMA (superior mesenteric artery).

43.    Upon information and belief, this was supposed to have been addressed by Dr. Alan Koslow in his operation of KL in December 2015.

44.    Because of KL's continued medical issues, which were either caused by, or not addressed by Dr. Alan Koslow, he was admitted urgently to Greenville Health System for acute mesenteric ischemia.

45.    The next day KL underwent a diagnostic aortogram with selective imaging of the lumbar collateral to the celiac and renal arteries; this confirmed the celiac and SMA occlusion.

46.    With the ongoing mesenteric ischemia and occluded celiac, SMA and IMA (inferior mesenteric artery) he underwent a balloon angioplasty and stents on January 21, 2016.

47.    During this study, it was noted the bypass graft to the right groin was occluded less than one month after it was performed. He was discharged home on January 22, 2016.

48.    At KL's follow up visit on March 7, 2016, with Vascular Health, he was noted to have gained weight but was still having right leg pain with walking starting at 100 feet.

49.    A CT angiogram of the abdomen and pelvis with and without contrast was performed.

50.    The exam revealed the SMA stent was patent, the celiac axis and origin were occluded, the right common and external iliac arteries and the bypass graft were occluded as well as the left external iliac artery. These were areas that were supposedly addressed by Dr. Alan Koslow in earlier procedures.

51.    On April 4, 2016, Mr. Langager followed up with Dr. Gray at Vascular Health since the VA was no longer providing vascular care.

52.    On April 26, 2016, KL saw Dr. Androes who tried medical management prior to proceeding to surgery.

53.    KL was to return in 2 months and if medical management failed, they would schedule his surgery.

54.    Unfortunately, KL acquired a knot behind his left knee and went to the ER on July 1, 2016, where he was diagnosed with a DVT and placed on an anticoagulant.

**(Defendants' Actions, Negligence, and Responsibility)**

55.    The United States of America and its employees (Physicians, including Dr. Koslow) improperly performed a bypass graft, thus causing it to re-occlude subsequent to the surgical procedure.

56.     Additionally, the VA was negligent in its credentialing of Dr. Koslow as he had lost or had his medical license suspended (prior to reinstatement) before coming to the VA System in South Carolina.

57.     The malfeasance of Dr. Koslow was well known and the VA hired him knowing of all of his surgical mismanagement issues.

58.     Dr. Koslow also performed the surgeries on KL in a way that did not remedy his problems.

59.     This is not an all-inclusive list of all the medical mismanagement of KL, but is representative of many of the things done improperly by Dr. Koslow and the USA

60.     The actions or inactions of the VA, their agents and/or employees were below the standard of care and contributed to KL's injuries.

61.     As a result of the actions and/or inactions of VA, its agents and/or employees, KL has had to undergo extensive medical treatment, incur medical bills and other expenses, including expenses for travel and lodging in order to receive medical care, suffer vocational loss, experience the loss of enjoyment of life and, undergo tremendous pain and suffering.

62.     Because of KL's damages, Deborah Langager has had to provide extraordinary medical care to her husband, their relationship has been negatively affected, and she has suffered a loss of consortium and society with her spouse.

**FOR A FIRST CAUSE OF ACTION**
(Medical Negligence)

63.     Plaintiffs reiterate Paragraphs 1-61 above as if set forth verbatim herein.

64.     Agents and employees of the Defendant USA undertook the duty to render medical care to KL in accordance with the prevailing professional standards of care for medical providers in the national community.

65.    The injuries to Mr. Langager were the direct and proximate result of and were caused and occasioned by the negligence, carelessness, recklessness, willfulness, and wantonness on the part of a physician who is incompetent (as apparently Dr. Koslow was found by the IOWA medical Board) and by Defendant (by and through Dr. Koslow), in failing to possess and exercise that degree of medical training, competency, and skill ordinarily and customarily possessed and exercised by physicians under similar circumstances.

66.    Agents and/or Employees of Defendant USA departed from the prevailing professional standards of care and treatment of the Plaintiff KL and were thereby negligent, careless, grossly negligent, reckless and acted in violation of the duties owed to the Plaintiff in that they committed one or more of the following acts of omission or commission, any or all of which were departures from the prevailing standards of care:

a.    Allowing Dr. Koslow to operate on or treat Mr. Langager at all;

b.    In failing to inform Mr. Langager of Dr. Koslow's incompetency and his charges and agreement with the Iowa Medical Board;

c.    In Dr. Koslow improperly performing the procedures on Mr. Langager;

d.    In Dr. Koslow improperly following-up on the signs and symptoms of a failed vascular bypass/failed graft;

e.    In Dr. Koslow's failure to insure the graft was open;

f.    In the delay in getting Mr. Langager to see an alternative competent vascular surgeon, especially after the VA knew that the bypass had failed; and

g.    In such other ways as may be shown at the trial of this case.

67.    As a direct and proximate result of the negligence, carelessness, gross negligence, recklessness and departure from the professional standards of care by the Defendant United States' employee health care providers, Mr. Langager suffered injuries to his lower extremity, which led

to Mr. Langager's personal injury, conscious pain and suffering, medical expenses, mental anguish, loss of enjoyment of life, and other general and consequential damages.  All damages should be in an amount determined by a judge in this action.

**FOR A SECOND CAUSE OF ACTION**
(Loss of Consortium)

68.     Plaintiffs reiterate Paragraphs 1-64 above as if set forth verbatim herein.

69.     Plaintiff Deborah Langager suffered a loss of consortium because of Defendant's actions and/or inactions.  She also provided extraordinary medical care to her husband for which she is entitled to reimbursement. She is therefore entitled to an award of damages to compensate her for her loss of the society, comfort, companionship, support, and good offices of her husband.

WHEREFORE, Plaintiffs respectfully pray for judgment against the Defendant for actual damages, special damages, consequential damages, and punitive damages in an amount to be determined by the jury at the trial of this action, for the costs and disbursements of this action and for such other and further relief as this Court deems just and proper.

*Signature on following page*

Respectfully submitted,

**MCGOWAN HOOD & FELDER, LLC**

s/S. Randall Hood
S. Randall Hood
MCGOWAN, HOOD, & FELDER, LLC
Federal ID Number: 6103
1539 Health Care Drive
Rock Hill, South Carolina 29732
803-327-7800 (phone)
rhood@mcgowanhood.com

Shawn B. Deery
MCGOWAN, HOOD, & FELDER, LLC
Federal ID Number: 09819
1517 Hampton Street
Columbia, South Carolina 29201
(803) 779-0100 (Columbia)
sdeery@mcgowanhood.com

Rock Hill, South Carolina

November 21, 2017

12